# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN RIBEIRO, Individually and On Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>  v.<br><br>MICRO FOCUS INTERNATIONAL PLC, CHRISTOPHER HSU, STEPHEN MURDOCH, MIKE PHILLIPS, KEVIN LOOSEMORE, NILS BRAUCKMANN, KAREN SLATFORD, RICHARD ATKINS, AMANDA BROWN, SILKE SCHEIBER, DARRON ROOS, AND JOHN SCHULTZ,<br><br>      Defendants. | No. 1:18-cv-4764<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff John Ribeiro ("Plaintiff"), by and through his attorneys, alleges upon personal knowledge as to himself, and upon information and belief as to all other matters, based upon the investigation conducted by and through his attorneys, which included, among other things, a review of documents filed by Defendants (as defined below) with the United States Securities and Exchange Commission (the "SEC"), conference call transcripts, news reports, press releases issued by Defendants, and other publicly available documents, as follows:

## NATURE AND SUMMARY OF THE ACTION

1. This is a federal securities class action on behalf of all persons or entities who purchased or otherwise acquired Micro Focus American Depositary Shares ("ADSs") during the period from September 1, 2017 through March 19, 2018 (the "Class Period") or acquired Micro Focus ADSs issued pursuant to the August 4, 2017 Registration Statement and August 22, 2017 Prospectus, or traceable for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Securities Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a) Rule 10b-5 promulgated

thereunder by the SEC, 17 C.F.R. § 240.10b-5; and §§ 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act").

2.      Micro Focus purports to be a multinational global enterprise software provider that helps organizations leverage existing IT investments, enterprise applications, and emerging technologies to address business requirements. The Company is based in Newbury, Berkshire, United Kingdom.

3.      Micro Focus' ADSs are listed on the New York Stock Exchange under the ticker symbol "MFGP."

4.      On September 1, 2017, Micro Focus merged with a spin-off of Hewlett Packard Enterprise Company ("HPE") software business (the "HPE Merger").

5.      Leading up to the HPE Merger, in August 2017, Micro Focus filed a Registration Statement and Prospectus with the SEC. In these documents, Micro Focus touted the merger as a rare opportunity to increase the Company's scale and breadth and to enhance earnings per share. Micro Focus stated that the merger would yield significant cost benefits and add a substantial recurring revenue base.

6.      As a result of the Merger, Micro Focus issued American Depositary Shares ("ADSs") representing consideration of more than 222 million shares to HPE shareholders. The ADSs issued in the Merger closed at $28.81 per ADS on their initial trading day, representing over $6.4 billion in total market value.

7.      Following the Merger, in January 2018, Micro Focus disclosed that its anticipated financial and operating results were declining and would be lower than performance metrics as compared to the prior year. At the same time, Defendant Hsu stated that the Company

anticipated that its revenue for the year ending October 31, 2018 would decline by 2% to 4% when compared to the year ending October 31, 2017.

8.     Then, just two months later, on March 19, 2018, Micro Focus filed an update on Form 6-K that stated the Company's revenue declines had significantly accelerated. Specifically, Micro Focus lowered its constant currency revenue guidance for the twelve months ended October 31, 2018 to minus 6% to minus 9% compared to the prior year. In the days following, Micro Focus share values dropped nearly 54%.

9.     Also, on March 19, 2018, Defendant Christopher Hsu abruptly resigned as Micro Focus' CEO.

## JURISDICTION AND VENUE

10.     The federal law claims asserted herein arise under §§ 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5; §§11, 12(a)(2) and 15 of the Securities Act, 15 U.S.C. §§77k, 77l(a)(2) and 77o; and the rules and regulations of the SEC promulgated thereunder.

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and § 27 of the Exchange Act, 15 U.S.C. § 78aa and §22 of the Securities Act (15 U.S.C. §77v).

12.     This Court has jurisdiction over each Defendant named herein because each Defendant is an individual or corporation who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

13.     Venue is proper in this District pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1931(b), as the Company's ADSs are listed on the New York Stock

Exchange. Moreover, venue is proper in this District pursuant to §22 of the Securities Act and 28

U.S.C. §1391(b) as the Company conducts business in this judicial district.

14.     In connection with the acts, omissions, conduct and other wrongs in this

Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate

commerce including but not limited to the United States mail, interstate telephone

communications and the facilities of the national securities exchange.

## PARTIES

15.     Plaintiff John Ribeiro was a shareholder of Micro Focus during the Class Period.

As set forth in the accompanying certification, incorporated by reference herein, Plaintiff

acquired Micro Focus ADSs in the HPE Merger and purchased, acquired, and held shares of the

Company at artificially inflated prices during the Class Period and has been damaged by the

revelation of the Company's material misrepresentations and material omissions.

16.     Defendant Micro Focus is a multinational software and information technology

business based in Newbury, Berkshire, United Kingdom. The Company's ADSs trade on the New

York Stock Exchange under the ticker symbol "MFGP."

17.     Defendant Christopher Hsu ("Hsu") served as Chief Executive Officer ("CEO")

and a Micro Focus director from September 1, 2017 (the date of the Merger) through March 19,

2018, when he resigned. Prior to his tenure at Micro Focus, Hsu served as Chief Operating Officer

of HPE and the Executive Vice President and General Manager of HPE's software business

segment, which was acquired by Micro Focus in the Merger.

18.     Defendant Stephen Murdoch ("Murdoch") served as the CEO and a director of

Micro Focus until he was replaced by Hsu as a result of the Merger. While Hsu served as CEO of

the Company, Murdoch became the Company's COO. Murdoch became CEO and a director of

the Company after defendant Hsu's resignation. Defendant Murdoch signed or authorized the signing of the false and misleading Registration Statement and Prospectus.

19.     Defendant Mike Phillips ("Phillips") served as the Chief Financial Officer ("CFO") and a director of Micro Focus at the time of the Merger. On January 8, 2018, Micro Focus announced the Phillips would be leaving his role as CEO to serve as the Company's Director of Mergers and Acquisitions ("M&A"). Defendant Phillips signed or authorized the signing of the false and misleading Registration Statement and Prospectus.

20.     Defendant Kevin Loosemore ("Loosemore") served as the Executive Chairman of Micro Focus at the time of the Merger. Defendant Loosemore signed or authorized the signing of the false and misleading Registration Statement and Prospectus.

21.     Defendant Nils Brauckmann ("Brauckmann") served as the CEO of Micro Focus's SUSE segment and a director of the Company's board (the "Board") at the time of the Merger. Defendant Brauckmann signed or authorized the signing of the false and misleading Registration Statement and Prospectus.

22.     Defendant Karen Slatford ("Slatford") was, at the time of the Merger, a director of the Company. Defendant Slatford signed or authorized the signing of the false and misleading Registration Statement and Prospectus.

23.     Defendant Richard Atkins ("Atkins") was, at the time of the Merger, a director of the Company. Defendant Atkins signed or authorized the signing of the false and misleading Registration Statement and Prospectus.

24.     Defendant Amanda Brown ("Brown") was, at the time of the Merger, a director of the Company. Defendant Brown signed or authorized the signing of the false and misleading Registration Statement and Prospectus.

25.     Defendant Silke Scheiber ("Scheiber") was, at the time of the Merger, a director of the Company. Defendant Scheiber signed or authorized the signing of the false and misleading Registration Statement and Prospectus.

26.     Defendant Darren Roos ("Roos") was, at the time of the Merger, a director of the Company. Defendant Roos signed or authorized the signing of the false and misleading Registration Statement and Prospectus.

27.     Defendant John Schultz ("Schultz") as stated in the Offering Documents, would become a director of the Company following the Merger. On December 20, 2017, Micro Focus announced that Shultz would leave the board.

28.     The defendants listed in paragraphs 17—27 are collectively referred to herein as the "Individual Defendants."

29.     The Individual Defendants, because of their positions at the Company, possessed the power and authority to control the content and form of the Company's annual reports, quarterly reports, press releases, investor presentations, and other materials provided to the SEC, securities analysts, money and portfolio managers and investors, *i.e.*, the market. The Individual Defendants authorized the publication of the documents, presentations, and materials alleged herein to be misleading prior to its issuance and had the ability and opportunity to prevent the issuance of these false statements or to cause them to be corrected. Because of their positions within the Company and their access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were false and misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

**I.      Micro Focus Announces the Planned Merger with HPE.**

30.     Micro Focus is a multinational software and information technology firm based in Newbury, Berkshire, United Kingdom. The Company purports to focus on the management of mature infrastructure software assets to help organizations leverage additional value from their investments in critical IT infrastructure and business applications. It operates through the following segments: Micro Focus Product Portfolio ("Existing Products") and SUSE Product Portfolio. The Existing Products segment is comprised of host connectivity; identity; access and security; development and information technology operations management tools; and collaboration and networking. The SUSE Product Portfolio segment provides and supports enterprise—grade linux and open source solutions.

31.     On September 7, 2016, Micro Focus announced a proposed merger with HPE Software, the software business segment of HPE. As consideration, Micro Focus would issue newly registered ADSs to HPE shareholders. In addition, HPE would receive $2.5 billion financed through newly incurred indebtedness of HPE Software, and Micro Focus shareholders would receive a $400 million return of value prior to completion. Immediately following the completion of the Merger, HPE shareholders would own 50.1% of the fully diluted share capital of the combined company.

32.     The Merger had a valuation of $8.8 billion and was larger than Micro Focus's market capitalization at the time. The Merger was projected to triple the Company's revenues. Micro Focus described the Merger as a "[r]are opportunity to increase significantly Micro Focus' scale and breadth [through the combination] with a business operating in adjacent and complementary product areas with similar characteristics and benefitting from a high proportion

of recurring revenues and strong cash conversion." The Company also stated that the Merger

would result in "annual revenues of US $45 billion and EBITDA of US $1.35 billion."

Defendant Loosemore, Micro Focus's Executive Chairman at the time, stated that the Merger

would create "one of the world's largest infrastructure software companies with leading positions

across a number of key products," and would represent "a compelling opportunity to create

significant value for both companies' shareholders."

33.    Through the Merger, Micro Focus would acquire a significant number of assets of

the former British software firm Autonomy Corporation plc ("Autonomy"). Autonomy was

acquired by Hewlett-Packard Company ("HP"), a predecessor entity to HPE, in a 2011 deal

valued at $10.3 billion. In 2012, HP recorded an $8.8 billion impairment charge related to the

write-down of goodwill and intangible assets from its acquisition of Autonomy.

34.    HP subsequently accused Autonomy of fraud and accounting misrepresentations.

As a result, the US. Department of Justice filed fraud charges against Autonomy's former CFO.

35.    Before the Merger was finalized, Micro Focused disclosed that the problems

associated with Autonomy would not affect the quality of the assets received by Micro Focus in

the Merger. The Company stated that most of the Autonomy assets had been sold and at the time

of the Merger, and that HPE owned a relatively small portion of Autonomy assets.

36.    On an earnings call in July 2017, Defendant Loosemore reassured investors that

the Autonomy assets would not negatively impact the Company.

37.    Micro Focus insisted that the Company was implementing strong measures to

successfully integrate HPE. On May 9, 2017, Defendant Loosemore reassured investors on an

earnings call, claiming: "We are encouraged by the early progress that HPE Software's

management are making on implementing operational efficiencies and the speed of change in the business."

38.     On July 12, 2017, Defendant Murdoch, then CEO, stated that Micro Focus had deployed integration teams that were "all managed under a common governance structure, tracking more than ten thousand very specific tasks through to completion." Such efforts were to bolster the operational efficiencies of the upcoming combined company.

39.     Micro Focus shareholders voted to approve the Merger on May 26, 2017.

40.     HPE shareholders did not vote.

## II.     Micro Focus' Materially Misleading and Incomplete Prospectus and Registration Statement.

41.     On August 4, 2017, Micro Focus filed its Form F-4 registration statement with the SEC for the ADSs to be issued in the Merger. The Form F-4 was amended and declared effective on August 15, 2017 (the "Registration Statement").

42.     On August 22, 2017, Micro Focus filed a prospectus for the ADSs to be issued in the Merger on Form 424B3 (the "Prospectus").

43.     The Registration Statement and Prospectus are collectively referred to herein as the Registration Statement.

44.     The Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state the facts necessary to make the statements not misleading, and was not prepared in accordance with the rules and regulations governing its preparation.

45.     The Registration Statement stated that the "estimated $6.6 billion market value of the Micro Focus ADSs . . . and the $2.5 billion Seattle Payment imply an enterprise value for HPE Software of approximately $9.1 billion."

46.    The Registration Statement disclosed the following as reasons for engaging in the Merger:

- the Merger "present[s] a rare opportunity to achieve a significant increase in Micro Focus' scale and breadth, with the potential to deliver enhanced Total Shareholder Returns consistent with Micro Focus' stated objectives."

- the Merger was expected to "enhance Adjusted Earnings Per Share by April 30, 2019 and thereafter, with scope for further benefits as operational improvements are realized across the Enlarged Group."

- "significant cost benefits will arise from reducing duplicated central costs, combining corporate support functions (where appropriate) and increasing efficiency across all functions."

- the Merger would "create significantly greater scale and breadth of product portfolio covering largely adjacent areas of the software infrastructure market, thereby creating one of the world's largest pure—play infrastructure software companies;"

- the Merger would "add a substantial recurring revenue base to Micro Focus' existing product portfolio, together with access to important new growth drivers and new revenue models;" and

- the Merger would "accelerate operational effectiveness over the medium term, through the alignment of best practices between Micro Focus and HPE Software in areas such as product development, support, product management, account management, and sales force productivity, as well as achieving operational efficiencies where appropriate."

47.     The Registration Statement also stated that the Merger would improve HPE's business, citing that the Merger would improve "operating efficiencies to enable HPE software, combined with Micro Focus, to accelerate financial and operational performance." The Company stated another benefit of the Merger was the "convergence of businesses operating in adjacent and complementary product areas in order to better serve customers as a global provider of infrastructure software and the improvement of the profitability of HPE software through the application of Micro Focus' operating model."

48.     Although Micro Focus incurred $2.9 billion in new debt and guaranteed an additional $2.6 billion through the Merger and related transactions, the Registration Statement stated that the Company's "available liquidity and working capital will be sufficient for not less than the next 12 months following the date of this information statement/prospectus" and that the Company was "targeting to reduce" its initial pro forma net debt to Facility EBITDA ratio "to its stated target of 2.5x Facility EBITDA within two years following Closing" from the 3.3x ratio expected at the completion of the Merger.

49.     The Registration Statement detailed the Company's due diligence of the HPE Software target. The Registration Statement explains that the "parties and their respective advisors engaged in mutual due diligence of Micro Focus' business and HPE Software," as early as June 2016. During August and September 2016, "Micro Focus and HPE and their respective legal advisors also negotiated the terms of various financing arrangements for the transaction with various financial institutions during this period."

50.     According to the Registration Statement, the HPE Board considered "the potential value to HPE stockholders of the Micro Focus ADSs representing 50.1% of the Micro Focus Fully Diluted Shares that they will own immediately following the Merger, including value

resulting from: (1) the potential cost reductions attributable to efficiencies and synergies to be realized by combining HPE Software with Micro Focus and (2) the benefits of separating HPE Software form HPE's other businesses."

51.     The Registration Statement also highlighted the Company's "successful track record of executing and integrating selected strategic acquisitions." Specifically, Micro Focus touted that its management team "has successfully integrated the new business into the Micro Focus Group's then existing operations and executed a program of targeted cost cutting and/or restructuring in order to improve operational efficiencies and group profitability." The Company also stated that the group believes it has historically "successfully worked through these integration challenges and has not seen a material impact on its ability to obtain the desired integration results or improvements in operations and profitability."

52.     The Registration Statement touted the Company's track record of successful strategic acquisitions, by pointing to its "proven ability to execute" and "manage a portfolio of mature infrastructure software assets."

53.     The Company described the focus and strategy of its portfolio of assets as to bolster "revenue growth, operational leverage, and significant cash generation."

54.     The Company explained its use of acquisitions as a method to achieve a continuous and long-term objective of "15% to 20% per annum" return to its shareholders. Micro Focus explained that its strategy is, in part, "strong discipline around the use of cash".

55.     The Registration Statement included historical financial information for Micro Focus, showing the Company's revenues had increased each of the previous three fiscal years and that the Company earned revenues of $1.38 billion for the fiscal year ended April 30, 2017:

| (in thousands) | | 2015 | | 2016 | | 2017 |
|---|---|---|---|---|---|---|
| | | | | **As of and for the Year Ended April 30,** | | |
| **Statement of Comprehensive Income Data:** | | | | | | |
| Revenue | $ | 834,539 | $ | 1,245,049 | $ | 1,380,702 |
| Costs and expenses: | | | | | | |
| Cost of sales | $ | 140,547 | $ | 230,174 | $ | 237,169 |
| Selling and distribution costs | | 290,475 | | 416,333 | | 467,084 |
| Research and development expenses | | 113,292 | | 164,646 | | 180,104 |
| Administrative expenses | | 142,989 | | 138,962 | | 202,902 |
| | | 687,303 | | 950,115 | | 1,087,259 |
| Operating profit | | 147,236 | | 294,934 | | 293,443 |
| Other income (expense): | | | | | | |
| Share of results of associates | | (788) | | (2,190) | | (1,254) |
| Net finance costs | | (55,021) | | (97,348) | | (95,845) |
| Profit before tax | | 91,427 | | 195,396 | | 196,344 |
| Income tax benefit (expense), net | | 10,024 | | (32,424) | | (38,541) |
| Net income | $ | 101,451 | $ | 162,972 | $ | 157,803 |

56.     The Registration Statement provided further information, outlining the historical revenue breakdown between its operating segments. The breakdown in revenue of the Company's two operating segments, Micro Focus and SUSE, by revenue type in the fiscal year ended April 30, 2017 compared to the fiscal year ended April 30, 2016 and pro forma constant currency revenues in the fiscal year ended April 30, 2016 is shown in the table below:

| | Fiscal year ended April 30, 2017 Actual $m | Fiscal year ended April 30, 2016 Actual $m | Fiscal year ended April 30, 2017 Actual (Decline)/ Growth $m | Fiscal year ended April 30, 2017 Actual (Decline)/ Growth % | Fiscal year ended April 30, 2016 Pro forma Constant Currency $m | Fiscal year ended April 30, 2016 Pro forma Constant Currency (Decline)/ Growth $m | Fiscal year ended April 30, 2016 Pro forma Constant Currency (Decline)/ Growth % |
|---|---|---|---|---|---|---|---|
| **Micro Focus** | | | | | | | |
| Licence | **308.4** | 304.8 | 3.6 | 1.2% | 333.0 | (24.6) | (7.4%) |
| Maintenance | **720.7** | 644.5 | 76.2 | 11.8% | 754.5 | (33.8) | (4.5%) |
| Subscription | — | — | — | — | — | — | — |
| Consultancy | **48.2** | 41.9 | 6.3 | 15.0% | 54.8 | (6.6) | (12.0%) |
| **Total** | **1,077.3** | 991.2 | 86.1 | 8.7% | 1,142.3 | (65.0) | (5.7%) |
| **SUSE** | | | | | | | |
| Licence | — | — | — | — | — | — | — |
| Maintenance | — | — | — | — | — | — | — |
| Subscription | **298.7** | 248.9 | 49.8 | 20.0% | 245.5 | 53.2 | 21.7% |
| Consultancy | **4.7** | 4.9 | (0.2) | (4.1%) | 4.9 | (0.2) | (4.1%) |
| **Total** | **303.4** | 253.8 | 49.6 | 19.5% | 250.4 | 53.0 | 21.2% |
| **Group** | | | | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Licence | **308.4** | 304.8 | 3.6 | 1.2% | 333.0 | (24.6) | (7.4%) |
| Maintenance | **720.7** | 644.5 | 76.2 | 11.8% | 754.5 | (33.8) | (4.5%) |
| Subscription | **298.7** | 248.9 | 49.8 | 20.0% | 245.5 | 53.2 | 21.7% |
| Consultancy | **52.9** | 46.8 | 6.1 | 13.0% | 59.7 | (6.8) | (11.4%) |
| **Total Revenue** | **1,380.7** | 1,245.0 | 135.7 | 10.9% | 1,392.7 | (12.0) | (0.9%) |

57.     The Registration Statement continued to indicate Micro Focus' strong financial and growing position. The Company showed North American revenues increasing by over 12% between April 30, 2016 and April 30, 2017. The Registration Statement explained that while "the Micro Focus Product Portfolio did decline 5.7% on a pro forma constant currency basis in the fiscal year ended April 30, 2017 as compared to the fiscal year ended April 30, 2016, it delivered performance in line with management expectations." The breakdown in revenue of the two operating segments, Micro Focus and SUSE, by region in the fiscal year ended April 30, 2017 compared to the fiscal year ended April 30, 2016 and pro forma constant currency revenues in the fiscal year ended April 30, 2016 is shown in the table below:

| | Fiscal year ended April 30, 2017 Actual $m | Fiscal year ended April 30, 2016 Actual $m | Fiscal year ended April 30, 2017 Actual (Decline)/ Growth $m | Fiscal year ended April 30, 2017 Actual (Decline)/ Growth % | Fiscal year ended April 30, 2016 Pro forma Constant Currency $m | Fiscal year ended April 30, 2016 Pro forma Constant Currency (Decline)/ Growth $m | Fiscal year ended April 30, 2016 Pro forma Constant Currency (Decline)/ Growth % |
|---|---|---|---|---|---|---|---|
| **Micro Focus** | | | | | | | |
| North America | **591.4** | 525.2 | 66.2 | 12.6% | 627.1 | (35.7) | (5.7%) |
| International | **389.7** | 377.0 | 12.7 | 3.4% | 415.0 | (25.3) | (6.1%) |
| Asia Pacific & Japan | **96.2** | 89.0 | 7.2 | 8.1% | 100.2 | (4.0) | (4.0%) |
| **Total** | **1,077.3** | 991.2 | 86.1 | 8.7% | 1,142.3 | (65.0) | (5.7%) |
| **SUSE** | | | | | | | |
| North America | **121.8** | 108.6 | 13.2 | 12.2% | 108.7 | 13.1 | 12.1% |
| International | **142.8** | 115.6 | 27.2 | 23.5% | 111.6 | 31.2 | 28.0% |
| Asia Pacific & Japan | **38.8** | 29.6 | 9.2 | 31.1% | 30.1 | 8.7 | 28.9% |
| **Total** | **303.4** | 253.8 | 49.6 | 19.5% | 250.4 | 53.0 | 21.2% |
| **Group** | | | | | | | |
| North America | **713.2** | 633.8 | 79.4 | 12.5% | 735.8 | (22.6) | (3.1%) |
| International | **532.5** | 492.6 | 39.9 | 8.1% | 526.6 | 5.9 | 1.1% |
| Asia Pacific & Japan | **135.0** | 118.6 | 16.4 | 13.8% | 130.3 | 4.7 | 3.6% |
| **Total revenue** | **1,380.7** | 1,245.0 | 135.7 | 10.9% | 1,392.7 | (12.0) | (0.9%) |

14

58.     The Registration Statement also displayed the pro forma historical financials of

Micro Focus and Seattle SpinCo, Inc. ("Seattle"), the subsidiary of HPE that held the HPE

Software business assets. The Registration Statement stated that the two companies together had

earned $4.434 billion in combined revenues for the 12 months ended April 30, 2017, as indicated

below:

| (In millions of U.S. dollars, except for per share data) | Historical Micro Focus for the year ended April 30, 2017 | Adjusted Seattle for the twelve months ended April 30, 2017 | Pro forma merger adjustments | Total pro forma combined |
|---|---|---|---|---|
| **Revenue** | $        1,381 | $        3,053 | $             — | $        4,434 |
| Cost of sales comprising: | | | | |
| Cost of sales (excluding amortization of capitalized development costs and acquired technology intangibles) | (146) | (823) | — | (969) |
| Amortization of product development costs | (22) | — | — | (22) |
| Amortization of acquired technology intangibles | (69) | (97) | (62) | (228) |
| Cost of sales | (237) | (920) | (62) | (1,219) |
| **Gross profit** | $        1,144 | $        2,133 | $        (62) | $        3,215 |
| | | | | |
| Selling and distribution costs | (467) | (994) | (437) | (1,898) |
| Research and development expenses comprising: | | | | |
| Expenditure incurred in the year | (208) | (526) | — | (734) |
| Capitalization of product development costs | 28 | — | — | 28 |
| Research and development expenses | (180) | (526) | — | (706) |
| Administrative expenses | (203) | (546) | 321 | (428) |
| **Operating profit** | $        294 | $        67 | $        (178) | $        183 |

59.     The Registration Statement explained the importance of maintaining "high

customer satisfaction levels in order to retain and grow [the Company's] customer base." The

Statement specified the need for keeping Micro Focus' "20,000 customers" and HPE's "30,000"

customers satisfied:

> The Group's ability to maintain customer satisfaction depends in part on the quality
> of its professional service organization and technical and other support services,
> including the quality of the support provided on its behalf by certain partners. Once
> products are deployed within the IT environments of the Group's customers, these
> customers depend on the Group's ongoing technical and other support services, as
> well as the support of the Group's channel partners, to resolve any issues relating
> to the implementation and maintenance of the Group's products. **If the Group or
> its channel partners do not effectively assist its customers in deploying its
> products, succeed in helping its customers quickly resolve post-deployment
> issues, or provide effective ongoing support, the Group may be unable to sell**

**additional products to existing customers and its reputation with potential customers could be damaged.** As a result, the failure by the Group to maintain high-quality customer support could have a material adverse effect on the business, financial condition, results of operation and prospects of the Group.

[Emphasis added].

60.     The Registration Statement did not, however, disclose the pre-existing significant disruption to customer accounts and loss of HPE's customers base as a result of HPE's separation from HP.

61.     In addition, the Registration Statement disclosed that the Company's continued success relied on employee retention, and in particular the stability of its sales force. The Company stated that "Micro Focus believes the Group's success is dependent upon its ability to attract and retain senior management as well as other key employees, such as sales management, product management and development personnel that provide expertise and experience critical to the implementation of the Group's strategy."

62.     The Registration Statement discussed the material risks to the Company "if" it fails to maintain its key personnel and sales force employees; however, the Registration Statement neglected to disclose that a large number of sales employees had already been laid off, quit, or changed roles, resulting in a decreasing sales capacity.

63.     The statements in paragraphs 45—62 were materially false and misleading when made because they failed to disclose:

> a.   that the target HPE had experienced significant disruptions in its number of global accounts due to its departure from HP, which materially affected Micro Focus' ability to realize the expected synergies from the Merger.

b.  that Micro Focus and HPE had already begun experiencing massive employee
attrition, including key sales personnel, which was directly lowering the
Company's operational and financial performance.

c.  that Micro Focus' core legacy business was on pace to substantially miss market
expectations for its interim results ended October 31, 2017. Specifically, the
Company's Existing Products portfolio ultimately declines 7% and its licensing
revenues dropped 17% during this time.

d.  that the Company's North American sales outlook was grim, as execution
problems ensued.

e.  that HPE Software significantly lacked operational capabilities, a steady customer
base, products, or key personnel which would justify its Merger valuation.

f.  that the Company failed to adequately integrate HPE from either an operations,
procedures, or personnel perspective.

g.  that the Company did not conduct adequate due diligence ahead of its Merger
with HPE.

h.  that the total enterprise value for the Merger was artificially inflated by more than
$3.4 billion; and

i.  that as a result of (a)-(h), the Company's ability to service its increased debt
obligations, which were incurred as a result of the Merger, had become materially
impaired.

64.    Item 303 of SEC Regulation S-K, 17 C.F.R. §229.303 (a)(3)(ii), requires
defendants to "[d]escribe any known trends or uncertainties that have had or that the registrant
reasonably expects will have a material favorable or unfavorable impact on the sales or revenues

or income from continuing operations." Similarly, Item 503 of SEC Regulation S-K, l7 C.F.R. §229.503, requires, in the "Risk Factor" section of registration statements and prospectuses, "a discussion of the most significant factors that make the offering speculative or risky" and requires each risk factor to "adequately describe the risk." 'The failure of the Registration Statement to disclose the facts listed in 1145 violated 17 C.F.R. §229.303(a)(3)(ii), because these undisclosed facts would (and did) have an unfavorable impact on the Company's sales, revenues and income from continuing operations. This failure also violated 17 C.F.R. §229.503 because these specific risks were not adequately disclosed, or disclosed at all, even though they were some of the most significant factors that made an investment in Micro Focus ADSs speculative or risky.

### III.    The Merger

65.    The Merger between Micro Focus and HPE was completed on September 1, 2017, and as a result, Micro Focus issued ADSs representing more than 222 million shares to HPE shareholders.

66.    The ADSs issued in the Merger closed at $28.81 per ADS on their initial trading day, representing over $6.4 billion in total market value.

67.    On September 6, 2017, Micro Focus filed its third quarter financial results and an update for the period ending October 31, 2017 for HPE Software on Form 6-K. The Form 6-K stated that HPE Software generated revenues of $718 million for the quarter ended July 31, 2017, which represented a 3% revenue decline compared to the same period in 2016.

68.    The Form 6-K also provided guidance for HPE Software for the year ended October 31, 2017 in the range of $2.89 billion to $2.96 billion "driven by the active reduction of less profitable professional services in sub-scale service lines and geographies together with

lower license revenue offset by increasing SaaS revenue and support revenue being broadly flat."
This guidance range implied fourth quarter 2017 revenues were down 13% at the midpoint.

69.    On January 8, 2018, Micro Focus provided its financial and operating results for
the six months ended October 31, 2017 on Form 6-K (the "January Interim Update"). The
Company reported revenue of only $1.235 billion for the period and an adjusted EBITDA of
only $530 million.

70.    The HPE Software revenue for the year ended October 31, 2017 came in at the
very bottom of the prior reported guidance at $2.891 billion, and $34 million below the mid-
point. In addition, the Company stated that it had suffered sales execution issues in its North
America region stemming from the loss of key sales personnel. **Micro Focus's legacy
businesses revenue came in 2.7% lower and Adjusted EBITDA came in 4.1% lower for the
period** as Micro Focus stated it had "put operational improvement plans on hold while working
on the completion of the HPE Software transaction." In addition, Micro Focus reported revenues
of only $500.3 million for the six months ended October 31, 2017 in its Existing Products
segment, reflecting a 7% year-over-year decline. The Company's licensing services in its
Existing Products segment declined 17% and its consultancy services in the segment declined
11.7% during this same time.

71.    The Company also revealed that defendant Phillips would change positions from
CFO to the Company's Director of M&A.

72.    As part of the January 8, 2018 announcement, the Company reported top-line
guidance for the 12 months ending October 2018 to be a decline of 2 to 4 percent. Defendant
Hsu stated "We anticipate revenues for the Group for the twelve months ending 31 October 2018

will decline by 2% to 4% when compared to the pro-forma revenues for the 12 months ended 31 October 2017 of $4,226.7m."

## IV.    THE TRUTH EMERGES

73.    Then, on March 19, 2018, Micro Focus filed a trading update and management change on a Form 6-K filed with the SEC. The Form 6-K stated that the Company's revenue declines had significantly accelerated. Specifically, **Micro Focus lowered its constant currency revenue guidance for the twelve months ended October 31, 2018 to minus 6% to minus 9%** compared to the prior year. Thus, just two months after the January 8, 2018 announcement, Micro Focus' revenue guidance had declined significantly.

74.    The trading update also stated that the worsening revenue trends stemmed from disruption of former HP global customer accounts as a result of the split between HP and HPE – an event that occurred in November 2015 – and that the Company had suffered ongoing sales execution issues, particularly in North America, as well as significant employee attrition.

75.    In addition, the trading update revealed that defendant Hsu had abruptly resigned from the Company, despite taking the helm as CEO only six-and-a-half months previously and overseeing the Merger.

76.    On March 22, 2018 (the next trading day after the March 19, 2018 announcement), the price of Micro Focus ADS closed at $12.99 per ADS, representing a decline of more than 54% from the closing price of the ADS on the date of the Merger's close.

## CLASS ACTION ALLEGATIONS

77.    With respect to all Counts alleged in this Complaint, Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of himself and all persons or entities who purchased or otherwise acquired Micro Focus ADSs during the

period from September 1, 2017 through March 19, 2018 (the "Class Period") or acquired Micro

Focus ADSs issued pursuant to the Registration Statement and Prospectus or traceable thereto.

78.      Excluded from the Class are Defendants, directors and officers of the Company,

as well as their families and affiliates.

79.      The members of the Class are so numerous that joinder of all members is

impracticable. Throughout the Class Period, Micro Focus ADSs were actively traded on the

NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can

only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or

thousands of members in the proposed Class. As of September 1, 2017, the Company had

250,000,000 ADSs outstanding. Record owners and other members of the Class may be

identified from records maintained by Micro Focus or its transfer agent and may be notified of

the pendency of this action by mail, using the form of notice similar to that customarily used in

securities class actions.

80.      There is a well-defined community of interest in the questions of law and fact

involved in this case. Questions of law and fact common to the members of the Class which

predominate over questions which may affect individual Class members include:

     a.  Whether the Securities Act and Securities Exchange Act was violated by
Defendants;

     b.  Whether Defendants omitted and/or misrepresented material facts;

     c.  Whether Defendants' statements omitted material facts necessary in order to make
the statements made, in light of the circumstances under which they were made, not
misleading;

d.   Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

e.   Whether the price of the Company's stock was artificially inflated; and

f.   The extent of damage sustained by Class members and the appropriate measure of damages.

81.   Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct alleged herein.

82.   Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests that conflict with those of the Class.

83.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## LOSS CAUSATION

84.   Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

85.   During the Class Period, Plaintiff and the Class purchased and/or acquired Micro Focus securities at artificially inflated prices and were damaged thereby.

86.   Micro Focus ADSs were issued on September 1, 2017 (the day of the Merger) at a closing price of $28.81. Then, on March 19, 2018, Micro Focus filed a trading update and management change on a Form 6-K filed with the SEC. The Form 6-K stated that the Company's revenue declines had significantly accelerated. Specifically, Micro Focus lowered its constant

currency revenue guidance for the twelve months ended October 31, 2018 to minus 6% to minus 9% compared to the prior year. This more than doubled the rate of revenue decline provided in the January Interim Update. The trading update also stated that the worsening revenue trends stemmed from disruption of former HP global customer accounts as a result of the split between HP and HPE, and that the Company had suffered ongoing sales execution issues, particularly in North America, as well as significant employee attrition. On the same day, the Company's CEO of only about 6 months abruptly resigned.

87.    On this news, Micro Focus' ADS price fell over 50% to $12.93 on March 19, 2017.

88.    The decline in Micro Focus ADS price is directly attributable to the disclosures in its Form 6-K.

## FRAUD ON THE MARKET

89.    Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine that, among other things:

    a.    Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

    b.    The omissions and misrepresentations were material;

    c.    The Company's common stock traded in efficient markets;

    d.    The misrepresentations alleged herein would tend to induce a reasonable investor to misjudge the value of the Company's common stock; and

    e.    Plaintiff and other members of the class purchased the Company's common stock between the time Defendants misrepresented or failed to disclose material facts and the time that the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

90.     At all relevant times, the markets for the Company's stock were efficient for the following reasons, among others: (i) the Company filed periodic public reports with the SEC; and (ii) the Company regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures such as communications with the financial press, securities analysts, and other similar reporting services. Plaintiff and the Class relied on the price of the Company's common stock, which reflected all information in the market, including the misstatements by Defendants.

## NO SAFE HARBOR

91.     The statutory safe harbor provided for forward-looking statements under certain conditions do not apply to any of the allegedly false statements pleaded in this Complaint. The specific statements pleaded herein were not identified as forward-looking statements when made.

92.     To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

## CAUSES OF ACTION

## COUNT I

## Violation of § 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder (Against the Company and Hsu)

93.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

94.     During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that

they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

95.     Defendants violated § 10(b) of the Exchange Act and Rule 10b-5 in that they (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon those who purchased or otherwise acquired the Company's securities during the Class Period.

96.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for the Company's common stock. Plaintiff and the Class would not have purchased the Company's common stock at the price paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

## COUNT II

### Violation of § 20(a) of the Exchange Act
### (Against Hsu)

97.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

98.     The Individual Defendants acted as controlling persons of the Company within the meaning of § 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions at the Company, the Individual Defendants had the power and authority to cause or prevent the Company from engaging in the wrongful conduct complained of herein. The Individual Defendants were provided with or had unlimited access to the Company's reports, press releases, public filings and other statements alleged by Plaintiffs to be false or misleading

both prior to and immediately after their publication, and had the ability to prevent the issuance of those materials or to cause them to be corrected so as not to be misleading.

99.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

100.     As set forth above, Micro Focus and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## COUNT III

### Violations of § 11 of the Securities Act
### (Against All Defendants)

101.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein. This claim is not based on and does not sound in fraud.

102.     This claim is brought by Plaintiff and on behalf of other members of the Class who purchased or otherwise acquired Micro Focus ADSs pursuant to or traceable to the Company's Offering Documents. Each member of the Class acquired his, her, or its shares pursuant to and/or traceable to, and in reliance on, the Offering Documents. Micro Focus is the issuer of the ADSs through the Offering Documents, on which the Individual Defendants were signatories.

103.    Defendants issued and disseminated, and caused to be issued and disseminated, and participated in the issuance and dissemination of, material misstatements and/or omissions to the investing public that were contained in the Offering Documents, which misrepresented or failed to disclose, among other things, the facts as set forth above. By reason of the conduct alleged herein, each Defendants violated and/or controlled a person who violated Section 11 of the Securities Act, 15 U.S.C. §77k.

104.    Micro Focus is the issuer of the ADSs sold via the Offering Documents. As issuer of these ADSs, the Company is strictly liable to Plaintiff and the Class members for the material misstatements and omissions contained therein.

105.    At the times they obtained their shares of the Company, Plaintiff and the members of the Class did so without knowledge of the facts concerning the misstatements and omissions alleged herein.

106.    This claim is brought within one year after discovery of the untrue statements and/or omissions in the Offering Documents that should have been made and/or corrected through the exercise of reasonable diligence, and within three years of the effective date of the Offering Documents. It is therefore timely.

107.    At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Micro Focus ADSs was substantially lower than the prices paid by Plaintiff and the other members of the Class.

108.    By reason of the foregoing, Plaintiff and the other members of the Class are entitled to damages as measured by the provisions of Section 11(e), 15 U.S.C. 77K(e), from the Defendants and each of them, jointly and severally.

## COUNT IV

### Violations of § 12(a)(2) of the Securities Act
### (Against All Defendants)

109.   Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein. This claim is not based on and does not sound in fraud.

110.   Plaintiff purchased Micro Focus ADSs pursuant to the Offering Documents.

111.   Defendants were sellers, offerors and/or solicitors of sales of the ADSs offered pursuant to the Registration Statement. The Registration Statement contained untrue statements of material fact and omitted other facts necessary to make the statements not misleading, and failed to disclose material facts, as set forth above.

112.   Plaintiff and the other Class members who purchased or otherwise acquired shares pursuant to the materially untrue and misleading Prospectus did not know or, in the exercise of reasonable diligence could not have known, of the untruths and omissions contained in the Registration Statement.

113.   Defendants owed to Plaintiff and the other Class members who purchased or otherwise acquired shares pursuant to the materially false and misleading Prospectus the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus, to ensure such statements were true and that there was no omission of material fact necessary to prevent the statements contained therein from being misleading. Defendants did not make a reasonable investigation or possess reasonable grounds to believe that the statements contained in the Prospectus were true and without omissions of any material facts and were not misleading. By virtue of the conduct alleged herein, Defendants violated § 12(a)(2) of the Securities Act.

114.     Plaintiff did not know, nor in the exercise of reasonable diligence could have known, of the untruths and omissions contained in the Prospectus at the time plaintiff acquired Micro Focus ADSs.

## COUNT V

### Violations of § 15 of the Securities Act
### (Against The Individual Defendants)

115.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein. This claim is not based on and does not sound in fraud.

116.     This claim is asserted against the Individual Defendants, each of whom was a control person of Micro Focus at relevant times.

117.     The Individual Defendants were control persons of Micro Focus by virtue of, among other things, their positions as senior officers and directors of the Company, and they were in positions to control and did control, the false and misleading statements and omissions contained in the Registration Statement and Prospectus. The Individual Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/ or major shareholders of Micro Focus and/or HPE Software. The Company controlled the Individual Defendants and all of its employees.

118.     None of the Individual Defendants made reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement and Prospectus were accurate and complete in all material respects. Had they exercised reasonable care, they could have known of the material misstatements and omissions alleged herein.

119.     Defendants were culpable participants in the violations of §§ 11 and 12(a)(2) of the Securities Act alleged in the Causes of Action above, based on their having signed or

authorized the signing of the Registration Statement and having otherwise participated in the process that allowed the issuance of Micro Focus ADSs in the Merger to be successfully completed.

120.     This claim was brought within one year after the discovery of the untrue statements and omissions in the Registration Statement and Prospectus and within three years after Micro Focus ADSs was sold to the Class in connection with the Offering Documents.

121.     By reason of the misconduct alleged herein, for which Micro Focus is primarily liable, as set forth above, the Individual Defendants are jointly and severally liable with and to the same extent as Micro Focus pursuant to Section 15 of the Securities Act.

<strong>PRAYER FOR RELIEF</strong>

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.     determining that this action is a proper class action pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class as defined herein, and a certification of Plaintiff as class representative pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointment of Plaintiff's counsel as Lead Counsel;

B.     awarding compensatory and punitive damages in favor of Plaintiff and the other class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including pre-judgment and post-judgment interest thereon.

C.     awarding Plaintiff and other members of the Class their costs and expenses in this litigation, including reasonable attorneys' fees and experts' fees and other costs and disbursements; and

D.     awarding Plaintiff and the other Class members such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury in this action of all issues so triable.

Dated: May 30, 2018

**GARDY & NOTIS, LLP**

<u>/s/ Meagan A. Farmer</u>
Mark C. Gardy
Meagan A. Farmer
Tower 56
126 East 56th Street, 8th Floor
New York, NY 10022
(212) 950-0509 phone
(212) 905-0508 fax
mgardy@gardylaw.com
mfarmer@gardylaw.com

**BLOCK & LEVITON LLP**
Jeffrey C. Block
Jacob A. Walker, *pro hac vice to be filed*
155 Federal Street, Suite 400
Boston, MA 02110
(617) 398-5600 phone
(617) 507-6020 fax
jeff@blockesq.com
jake@blockesq.com

*Counsel for Plaintiff*